IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLANEY EARL BARNES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-630-L-BN |
| | § | |
| OFFICER ALVAREZ, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Blaney Earl Barnes, at the time an inmate at the Dallas County jail, filed a *pro se* civil rights complaint raising an excessive force claim. *See* Dkt. No. 3. The Court granted Barnes leave to proceed *in forma pauperis*, *see* Dkt. No. 9, and ordered that his complaint be served, *see* Dkt. No. 10. United States District Judge Sam A. Lindsay then referred this case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 15.

Defendant SRT Officer Oscar Alvarez filed an answer, asserting qualified immunity. *See* Dkt. No. 19, ¶ 2.4. He then filed a court-ordered motion for summary judgment on that nominally affirmative defense. *See* Dkt. Nos. 21, 23-27.

And the Court ordered Barnes to either file a motion for leave to conduct limited discovery in order to respond to the qualified immunity issues raised in the summary judgment motion or, alternatively, advise the Court that he does not need to conduct discovery to respond to Alvarez's summary judgment motion. *See* Dkt. No. 28. Barnes advised the Court that discovery was not needed. *See* Dkt. No. 31.

The Court then ordered Barnes to file a written response to the motion for summary judgment by November 8, 2019. *See* Dkt. No. 32. Although Banes subsequently (and unsuccessfully) sought court-appointed counsel, *see* Dkt. Nos. 33 & 35, and notified the Court of his change of address, *see* Dkt. No. 36, he never responded to the summary judgment motion. And the deadline by which to do so has passed.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment and dismiss this action with prejudice.

**Legal Standards**

I. <u>Qualified Immunity</u>

"A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law,'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008); brackets omitted). "But government officials performing discretionary duties" can respond to such a claim by asserting qualified immunity. *Id.* at 294 (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)). If they do, a court must consider each official's actions separately. *See, e.g., Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007).

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)); *accord Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation marks omitted); *accord City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774 (2015); *cf. Rich*, 920 F.3d at 294 ("In sum, QI 'represents the norm, and courts should deny a defendant immunity only in rare circumstances.'" (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018))); *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (Courts "must think twice before denying qualified immunity.").

Review of a motion for summary judgment based on qualified immunity is accomplished in two steps, and, while a court may conduct the required two-step examination in any order, *see Pearson*, 555 U.S. at 236, "deciding the two prongs in order 'is often beneficial,'" *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017) (quoting *Pearson*, 555 U.S. at 236).

Regardless which prong is addressed first, a court must decide "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional or statutory right." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (citing *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (per curiam); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)), *reversed on other grounds*, 136 S. Ct. 305 (2015). Put another way, under the first prong, a court simply

must decide "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

A court must also decide "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395. This second prong of the analysis requires a court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511. That is, "whether it would have been clear to a reasonable [official] in the [defendants'] position that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 572 U.S. 744, 758 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001); internal quotation marks and original brackets omitted); *see also Mullenix*, 136 S. Ct. at 308 ("[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right'"(quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012))).

> This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004)). The [United States] Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 "[And i]t is the plaintiff's burden to find a case in [his] favor that does not define the law at a 'high level of generality.'" Vann v. City of Southaven, 884 F.3d 307, 310 (5th Cir. 2018) (quoting Cass v. City of Abilene, 814 F.3d 721, 733 (5th Cir. 2016)).

*Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (citations

modified).[1]

The Supreme Court recently explained this inquiry in the Fourth Amendment context:

> Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." That is a necessary part of the qualified-immunity standard.

*Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (*quoting Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014); reversing denial of summary judgment on a qualified immunity defense); *see also Sause v. Bauer*, 138 S. Ct. 2561, 2562-63 (2018) (per curiam) (reversing dismissal of a *pro se* complaint based on the defendants' entitlement qualified immunity where the district court failed to liberally interpret the Fourth Amendment claims).

---

[1] *See also Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (A court "must be able to point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity." (footnote and internal quotation marks omitted)); *Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) ("While we may look to other circuits to find clearly established law, we must consider 'the overall weight' of such authority. A 'trend' alone is just that. As of December 2013, only two circuits had weighed in on the 'contours of the right.' These cases alone do not provide sufficient authority to find that the law was clearly established." (footnote omitted)); *Bustillos*, 891 F.3d at 222 (holding that the plaintiff failed to shoulder her burden to "point[] ... to any case that shows, in light of the specific context of this case, that the [defendants'] conduct violated clearly established law" and that, although the court's "independent review [ ] uncovered" persuasive authority, "a single, fifty year old case from another circuit is [not] sufficient in this instance to have 'placed the ... constitutional question [at issue] beyond debate'" (quoting *al-Kidd*, 563 U.S. at 741)).

"When a defendant asserts qualified immunity, the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity." *Shaw v. Villanueva*, 918 F.3d 414, 416-17 (5th Cir. 2019) (citing *Zapata*, 750 F.3d at 485; *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)); *cf. McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2018) ("When the motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm ... alleged and that defeat a qualified immunity defense with equal specificity.'" (quoting *Zapata*, 750 F.3d at 485 (quoting, in turn, *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)))).

"Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

That said, a plaintiff's burden at summary judgment "'to rebut a claim of qualified immunity once the defendant has properly raised it in good faith' ... 'is a demanding [one].'" *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (citations omitted).

And the qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Harlow*, 457 U.S. at 818; *see also Haverda*, 723 F.3d at 599. "If resolution of [qualified

immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment." *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)).

Accordingly, a court's qualified immunity inquiry at this stage requires that the Court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see Tolan*, 572 U.S. at 651 ("In articulating the factual context of the case, the Fifth Circuit failed to adhere to the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).[2] And, particularly applicable in *pro se* cases, "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence." *Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam)

---

[2] *See, e.g., Mitchell v. Cervantes*, 453 F. App'x 475, 477-78 (5th Cir. 2011) (per curiam) ("Mitchell's allegations in his verified complaint serve as competent summary judgment evidence and suggest a possible constitutional violation. ... Based on Mitchell's proffered facts, the appellants' use of force was not made in a 'good faith effort to maintain or restore discipline' and was not 'nontrivial' but disproportionate to any possible provocation. ... On Mitchell's allegations, as summarized by the district court, the appellants have not shown that their course of conduct was not objectively unreasonable under clearly existing law. Accordingly, they have not demonstrated that they are entitled to qualified immunity as a matter of law." (citations omitted)).

(citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)).

"Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this has 'nothing to do with the qualified immunity defense,'" *Haverda*, 723 F.3d at 599 (quoting *Barker*, 651 F.2d at 1124)), as "immunity ... [is] an entitlement distinct from the merits of the case," *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) (citation and quotation marks omitted).

II.  Excessive Force

"To prevail on a Section 1983 excessive force claim, 'a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Shepherd v. Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quoting *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (quoting, in turn, *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)); citing *Graham v. Connor*, 490 U.S. 386, 393-97 (1989)).

> Accidental contact between an officer and a civilian is not a Fourth Amendment seizure – even if it injures the civilian – so a § 1983 plaintiff claiming excessive force must show that force was applied intentionally. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989) (explaining that a seizure occurs only when a suspect's "freedom of movement" is terminated "through means intentionally applied" by the governmental actor); *Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018) (holding there can be no § 1983 liability for excessive force "in the absence of intentional conduct"). And even if the seizure involves intentional conduct, the district court must consider whether it was unreasonable under the specific circumstances of the seizure. *See, e.g., City of Escondido v. Emmons*, 139 S. Ct. 500, 503-04 (2019) (per curiam) (reversing the denial of qualified immunity where officers threw a man to the ground during an arrest).

*McDonald v. McClelland*, 779 F. App'x 222, 225-26 (5th Cir. 2019) (per curiam).

> In excessive-force claims under the Fourth Amendment, the reasonableness of an official's conduct depends on "the facts and

    circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The court must adopt "the perspective of a reasonable officer on the scene, rather than [judge] with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

*Brothers v. Zoss*, 837 F.3d 513, 518-19 (5th Cir. 2016) (footnote omitted).

## Analysis

In his verified complaint, Barnes – who states that he uses a walker because of "Type 1 Diabetes w/ neuropathy in both" his legs – alleges that, while he was leaving the medical department at the jail after receiving an insulin injection, he "and another inmate got into [a] verbal conflict in the hallway" in the presence of an unknown female officer who told Barnes to "stop cuzzing." Dkt. No. 3 at 5. He responded to her, "Fuck you!" and then "explain[ed] to her that she work in a jail system [where] it's the most cuzzing in the county and she need to put an application at a church house because no once force her to work under the condition." *Id.*

According to Barnes, "[O]fficer Alvarez was posted [nearby] and overhead the conversation." Alvarez "then approach[ed] me and grab my walker away from me and said you don't disrespect my officer." *Id.* Barnes alleges that Alvarez next "grabb[ed] my right arm and twist[ed] it behind my back pulling my arm high [causing] much pain on me to the point that I scream[ed]. He then kick me into my stomach with high

right knee." *Id.* at 6. Barnes alleges that another officer, Mosley, then "grab[bed] my left arm and they both slam me toward the ground until they put handcuff on me, pick me up then slam me with force into a restraining chair," where Barnes was restrained for two hours. *Id.*

As Barnes alleges, an overhead camera did indeed capture this incident. *See id.* And Alvarez filed a DVD consisting of two files of video recordings of the February 1, 2019 confrontation in support of his motion for summary judgment on qualified immunity. *See* Dkt. No. 27.

To resolve Alvarez's motion, although the Court generally must accept a plaintiff's verified allegations, *see Tolan*, 572 U.S. at 651; *Haggerty*, 391 F.3d at 655; *Mitchell*, 453 F. App'x at 477-78, to the extent that these videos discredit the description of facts in Barnes's verified complaint, the Court must "'consider the facts in the light depicted by the videotape[s],'" *Shepherd*, 920 F.3d at 283 (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)); *see also Scott v. Harris*, 550 U.S. 372, 381 (2007).[3]

---

[3] *Cf. Hutcheson v. Dallas Cnty., Tex.*, No. 3:17-cv-2021-BN, 2020 WL 1692950, at *9 (N.D. Tex. Apr. 7, 2020) ("Unlike a traditional affirmative defense when considered at summary judgment, where its movant 'must establish beyond peradventure all of the essential elements of the ... defense to warrant judgment in his favor,' *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986), once a defendant asserts qualified immunity – regardless how – the burden shifts to the plaintiff 'to demonstrate the inapplicability of the defense,' *McClendon*, 305 F.3d at 323. So, here, although the Court will 'view the evidence in the light most favorable to the nonmoving party[ – except to the extent that video evidence discredits the nonmovant's pleaded facts – ]the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity.' *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (per curiam) (citation omitted)." (citation modified and citations omitted)).

The undersigned has carefully reviewed both video recordings. Although the videos lack audio, they clearly confirm Barnes's allegation that he participated in a "verbal conflict in the hallway" with another inmate, as the shorter of the two videos depicts Barnes using a walker and being escorted by two (and then three) officers down the hallway while Barnes turns his head back several times, directing his attention to – and appearing to yell at – someone in the hallway just outside the camera's range. Barnes then removes one hand from the walker to wave it at the person down the hallway, who is still outside the range of the camera. Barnes next abandons his walker (pushing it aside) to move quickly down the hallway toward the person. At this point he is tackled by an officer and then restrained. While multiple officers attempt to gain control over Barnes, he struggles against them.

The videos completely discredit the version of facts alleged by Barnes to the extent that his complaint states a claim of excessive force. And the facts depicted by the videos reflect that the officers restraining Barnes (including Officer Alvarez) acted objectively reasonable considering the facts and circumstances they confronted. The Court should therefore grant the motion for qualified immunity and dismiss this action with prejudice. *See Brothers*, 837 F.3d at 518-19.

**Recommendation**

The Court should grant Defendant SRT Officer Oscar Alvarez's motion for summary judgment on qualified immunity [Dkt. No. 23] and dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on

all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 13, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE